# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| SHELLY FOLLOWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 25-cv-3122 |
| | ) |
| BOARD OF EDUCATION OF | ) |
| CLINTON COMMUNITY UNIT | ) |
| SCHOOL DISTRICT NO. 15, | ) |
| JESSICA PATRICK, AND CURT | ) |
| NETTLES, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendants Board of Education of Clinton Community Unit School District No. 15's ("School District"), Jessica Patrick's, and Curt Nettles' (collectively, "Defendants") Partial Motion to Dismiss and Strike Plaintiff's Amended Complaint and Supporting Memorandum (d/e 10) and Plaintiff Shelley Followell's ("Plaintiff") Response in Opposition (d/e 12). Because Count I of Plaintiff's Amended Complaint (d/e 8) does not state a claim upon which relief can be granted, but also does not seek punitive damages against Defendant School District,

Defendants' Motion (d/e 10) is GRANTED in part and DENIED in part.

## I. BACKGROUND

The following facts are alleged in Plaintiff's Amended Complaint (d/e 8) and are accepted as true at the motion to dismiss stage. Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 639 (7th Cir. 2015).

Plaintiff worked at Defendant School District as a first-grade paraprofessional starting in 2020. See d/e 8, ¶ 9. Plaintiff alleges that throughout the 2023-2024 school year, Defendants routinely pressured Plaintiff to fraudulently bill Medicaid by billing Medicaid for unused minutes with students. Id. at ¶ 13. That same year, Plaintiff repeatedly reported to her coworkers, as well as Defendant School District staff members and administrators, her good faith belief that Defendant School District was engaging in, or attempting to engage in, Medicaid billing fraud. Id. at ¶ 12.

On or about February 13, 2024, Plaintiff met with several Defendant School District employees, including Defendant Patrick—one of Defendant School District's elementary school's principals

and one of Plaintiff's supervisors who had final policymaking authority. Id. at ¶¶ 3, 5, 14. At the meeting, Defendant Patrick threatened to terminate Plaintiff if she did not bill Medicaid 20 minutes daily, even if Plaintiff did not provide a qualifying student with 20 minutes of services. Id. at ¶ 15. Plaintiff indicated that she would only submit billing to Medicaid for actual minutes provided to a qualifying student. Id. at ¶ 16.

On February 15, 2024, Defendants sent Plaintiff a letter threatening to fire her if she did not bill Medicaid 20 minutes daily, even if the minutes were not provided to a student. Id. at ¶ 17. Plaintiff refused to do so. Id. at ¶ 18.

On or about April 6, 2024, Plaintiff was called into a meeting with Defendant Patrick as well as Defendant Nettles—Defendant School District's superintendent, who had final policymaking authority—and Kari Veldman, whose title is not specified and who is not a defendant in this case. Id. at ¶¶ 4, 5, 19. Veldman insisted that Plaintiff bill Medicaid for minutes she spent just sitting by a qualifying child, and Plaintiff refused. Id. at ¶ 20. Defendant Nettles demanded that Plaintiff bill the 20 minutes daily to Medicaid

because the school received money as a result and told Plaintiff that if she would not do so, "we will have to sever our relationship and part ways." Id. at ¶ 21. The meeting ended, and Defendant Nettles walked Plaintiff to her classroom and said that he "hoped this could be fixed." Id. at ¶ 22.

After the April 6, 2024 meeting, Plaintiff did not hear anything else about the Medicaid billing issue until May 28, 2024, when Defendants notified Plaintiff of her termination with an effective termination date of June 25, 2024. Id. at ¶¶ 11, 23, 25. Plaintiff alleges that she was terminated because of her reports of and refusal to engage in Medicaid fraud. Id. at ¶ 25.

On June 18, 2025, Plaintiff filed an Amended Complaint in this Court. See d/e 8. As relevant here, Count I of the Amended Complaint asserts that Plaintiff "engaged in activity protected by the First Amendment when she, inter alia, continually expressed and reported her concerns relating to Medicaid fraud and refused to engage in Medicaid fraud." Id. at ¶ 32. Count I further asserts that "Plaintiff reported her concerns and refused to defraud the government because she, inter alia, wanted to protect the public

taxpayers, necessary Medicaid recipients, and the Medicaid system from abuse, waste, and fraud," such that her "speech was a matter of public concern." Id. at ¶ 33.

On July 2, 2025, Defendants filed a Partial Motion to Dismiss and Strike Plaintiff's Amended Complaint and Supporting Memorandum. See d/e 10. On July 14, 2025, Plaintiff filed a Response in Opposition. See d/e 12.

## II.   JURISDICTION

This Court has subject-matter jurisdiction because Plaintiff's claims arise under 42 U.S.C. § 1983, which is a federal statute, and the First Amendment of the United States Constitution. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Venue is proper because Defendant School District is located in DeWitt County, Illinois, in the Central District of Illinois and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Central District of Illinois. See 28 U.S.C. § 1391(b).

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the complaint's sufficiency. Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" that puts the defendant on notice of the allegations. Fed. R. Civ. P. 8(a)(2), see also Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). The Court accepts all well-pled facts alleged and draws all possible inferences in the plaintiff's favor. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

The complaint must put forth plausible grounds to demonstrate a claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plausible claim is one from which the court can draw reasonable inferences that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Additionally, the complaint must raise a reasonable expectation that discovery will reveal evidence of liability. Twombly, 550 U.S. at 556. A complaint merely reciting a cause of action or conclusory legal statements is insufficient. Iqbal, 556 U.S. at 678.

## IV.  ANALYSIS

For a public employee plaintiff to show that her speech is protected under the First Amendment, she must demonstrate that "(1) [s]he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [her] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." <u>Davis v. City of Chicago</u>, 889 F.3d 842, 845 (7th Cir. 2018) (internal citations omitted). On the issue of private citizen speech, the Supreme Court held in <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006) "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Id.</u> at 421.

Defendants argue in their Partial Motion to Dismiss and Strike that Plaintiff's "speech was not constitutionally protected as it was made pursuant to her official job duties as a paraprofessional," such that Plaintiff "did not speak as a private citizen, [and] dismissal of Count I with prejudice is appropriate." d/e 10, p. 4.

Page **7** of **17**

Defendants point to Plaintiff's assertions in her Amended Complaint indicating that "billing Medicaid was squarely within the scope of expectations for [her] employment and was part of her work assignments." Id. at p. 5 (citing d/e 8, ¶¶ 16, 20). Defendants argue that since Plaintiff's allegedly protected "speech was due and in response to her official duties as a paraprofessional responsible for billing Medicaid, she engaged in employee speech, which is not protected by the First Amendment." d/e 10, p. 5.

Plaintiff argues in her Response that, because the Court must accept Plaintiff's allegations as true and draw all reasonable inferences in Plaintiff's favor at the motion to dismiss stage, and because Plaintiff's Amended Complaint pled that she "spoke as a private citizen, she is afforded constitutional protection." d/e 12, pp. 1-2. Plaintiff cites to her Amended Complaint, which pleads that Plaintiff "reported her concerns and refused to defraud the government because she, inter alia, wanted to protect the public taxpayers, necessary Medicaid recipients, and the Medicaid system from abuse, waste, and fraud" and "intended to, inter alia, deter Defendants from engaging in Medicaid fraud." Id. at p. 2, see also

d/e 8, ¶¶ 33-34. Plaintiff argues that her "explicitly pled, private motivation removes her speech from the purview of Garcetti and makes Davis...inapposite." d/e 12, p. 2.

However, the Supreme Court in Garcetti referenced "the powerful network of legislative enactments—such as whistle-blower protection laws and labor codes—available to those who seek to expose wrongdoing." Garcetti, 547 U.S. at 425. Against that backdrop, the Seventh Circuit Court of Appeals has "repeatedly rejected such claims for a whistleblower carve-out from the category of unprotected employee speech." Ulrey v. Reichhart, 941 F.3d 255, 259 (7th Cir. 2019).

In Spiegla v. Hull, 481 F.3d 961 (7th Cir. 2007), the Seventh Circuit considered a prison guard who reported her supervisor for letting a vehicle pass without the required contraband search. See id. at 965-66. The Seventh Circuit determined that the guard "spoke as an employee, not a citizen, because ensuring compliance with prison security policy was part of what she was employed to do." Id. at 966. That the guard's "statements highlighted potential misconduct by prison officers [did] not change the fact that she was

speaking pursuant to her official responsibilities, not as a citizen 'contributi[ng] to the civic discourse.'" Id. at 967 (quoting Garcetti, 547 U.S. at 422).

In Ulrey v. Reichhart, 941 F.3d 255, (7th Cir. 2019), an assistant principal alleged that after she called the school board president because she disagreed with the superintendent's disciplinary decision, the superintendent forced her to resign in retaliation for the call. Id. at 258-59. The Seventh Circuit noted that the assistant principal's "written job description included duties to 'coordinate and administer student attendance and discipline policies,'" such that "[e]ven if Superintendent Reichhart violated school district policy by making an exception," the assistant principal's "speech fell within her official duties." Id. at 260.

Therefore, in light of Garcetti, Spiegla and Ulrey, that Plaintiff "wanted to protect [others] from abuse, waste, and fraud"—even if she thought Defendants were perpetuating "unlawful" "fraud[]"— does not categorically determine that Plaintiff spoke as a private citizen. d/e 8, ¶¶ 12, 13, 16, 17, 18, 20, 23, 25, 33.

Here, Plaintiff pleads that her work responsibilities included

"submit[ting] billing to Medicaid for actual minutes provided to a qualifying student." Id. at ¶ 16. Plaintiff pleads that she reported that Defendant School District committed Medicaid fraud during the 2023-2024 school year to her coworkers and to Defendant School District staff members and administrators—all of whom she exclusively identifies relative to her employment and employer. Id. at ¶ 12.

When Plaintiff indicated on or around February 13, 2024 that she would only submit billing to Medicaid for actual minutes provided to a qualifying student, it was at a meeting with Defendant School District employees, at which her supervisor, Defendant Patrick, threatened to terminate Plaintiff if she did not bill Medicaid 20 minutes daily, even if Plaintiff did not provide a qualifying student with 20 minutes of services. Id. at ¶¶ 14-16.

When Plaintiff again refused to bill Medicaid 20 minutes daily, even if the minutes were not provided to a student, she was responding to a February 15, 2024 letter from Defendants threatening to fire her if she did not do so. Id. at ¶¶ 17-18.

When Plaintiff on or around April 6, 2024 refused to bill

Medicaid for minutes even if she just sat by a qualifying child, it was at a meeting with Defendant Patrick and Defendant Nettles, who demanded that Plaintiff bill the 20 minutes daily to Medicaid, said that otherwise they would "sever [their] relationship and part ways," and walked Plaintiff to her classroom. Id. at ¶¶ 19-22.

In sum, Plaintiff's allegedly protected speech of "continually express[ing] and report[ing] her concerns relating to Medicaid fraud" was made during or in response to communications with her employer or coworkers regarding her work responsibility to "submit billing to Medicaid for actual minutes provided to a qualifying student" in her capacity as a public employee. Id. at ¶¶ 12, 16, 25, 32. Plaintiff's allegedly protected speech of "refus[ing] to engage in Medicaid fraud" directly involved her work responsibility to "submit billing to Medicaid for actual minutes provided to a qualifying student" as specified by Defendants—namely, her employer and supervisor—in work meetings and correspondence. Id. at ¶¶ 2-4, 16, 18, 20, 25, 32. Therefore, all of the allegedly protected speech Plaintiff pleads was made "pursuant to her official duties." Garcetti, 547 U.S. at 421.

Plaintiff points to Swearengin v. Board of Education of City of Chicago, No. 24 C 5279, 2025 WL 588624 (N.D. Ill. Feb. 24, 2025) as instructive. In Swearengin, after a public school principal ignored a school employee's reports that her son was being bullied at the school, the principal fired the school employee after she "reposted [her son's] assailants' videos [of the bullying] for commentary on social media and posted that Principal Barlow had done nothing about the incidents." Id. at *2. When the school employee filed a First Amendment retaliation claim, the school and principal moved to dismiss, arguing that the school employee was "acting in her role as a [school] employee when she reported" the misconduct. Id. at *3 (internal citations omitted). The magistrate judge disagreed, finding the school employee pled that she spoke as a private citizen:

> Yes, the complaint says at one point that the plaintiff is a teacher, but, more importantly, the complaint repeatedly makes clear that plaintiff is the mother of the student who, according to the complaint, was being bullied. Being a teacher does not trump being a mother, nor does the former eliminate the fact of the latter. Here, as always, "reality must dominate judgment." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 774 (1984). There is more than enough in the complaint to allege that plaintiff was speaking as a private citizen, and the

Page **13** of **17**

> allegations in the complaint make it certainly more than just plausible that that was the greater motivation for her speaking out. Tellingly, the defendant seems to unwittingly concede this when it argues that plaintiff was not speaking on a matter of public concern because she was motivated out of "concerns about her own child."

Swearengin, 2025 WL 588624 at *3 (internal complaint citations omitted).

Here, Plaintiff argues that, "like the dual roles of plaintiff-teacher and plaintiff-mother in Swearengin, Plaintiff here had the dual roles of plaintiff-paraprofessional and plaintiff-taxpayer or plaintiff-Medicaid advocate/defender; Plaintiff's First Amended Complaint makes clear that she was speaking as the latter—not the former." d/e 12, p. 3. Therefore, Plaintiff argues, the allegations in her "Amended Complaint evidence [h]er speech as private and make it 'certainly more than just plausible that [her private concern] was the greater motivation for her speaking out.'" Id. at pp. 3-4 (quoting Swearengin, 2025 WL 588624 at *3).

The Court notes that Plaintiff's Response misquotes paragraphs 32-36 of Count I of her Amended Complaint as pleading that Plaintiff "reported her private concerns," d/e 12, p. 2, when the Amended Complaint does not include the word "private" in those

paragraphs or anywhere in Count I. See d/e 8, ¶¶ 32-36. Further, Plaintiff's Amended Complaint identifies Plaintiff exclusively as a paraprofessional employed by Defendant School District. See id. at ¶ 9. Plaintiff does not plead that she identifies as a "taxpayer" or a "Medicaid advocate/defender." Even if Plaintiff pleading that she made her allegedly protected speech were to implicitly indicate that she was a "taxpayer" and "Medicaid advocate/defender," both identities are considerably broader and more amorphous than the Swearengin school employee's identity as a mother, which she held regardless of her contested speech. Therefore, the Court finds that Plaintiff did not plead that she was speaking from a separate, private identity.

As discussed earlier, because all of Plaintiff's allegedly protected speech as pled was made "pursuant to her official duties," Plaintiff was "not speaking as [a] citizen[] for First Amendment purposes, and the Constitution does not insulate [her] communications from employer discipline." Garcetti, 547 U.S. at 421. Plaintiff does not plead that she "made the speech as a private citizen," such that, as a public employee, she cannot "show that her

speech is protected under the First Amendment." Davis, 889 F.3d at 845 (7th Cir. 2018) (internal citations omitted). Therefore, Count I of Plaintiff's Complaint does not sufficiently plead that Plaintiff is entitled to relief and Defendants' Partial Motion to Dismiss and Strike Plaintiff's Amended Complaint (d/e 10) is GRANTED as to Count I of Plaintiff's Amended Complaint (d/e 8). See Fed. Rs. Civ. P. 12(b)(6) and 8(a)(2), see also Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002).

Defendants also argue in their Partial Motion to Dismiss and Strike that punitive and exemplary damages are not recoverable against Defendant School Board and should be struck from Plaintiff's Amended Complaint. See d/e 10, pp. 6-7. But, Plaintiff's Amended Complaint states that "[p]unitive damages are not sought from" Defendant School Board. d/e 12, p. 7 n. 1. Defendants' Partial Motion to Dismiss and Strike Plaintiff's Amended Complaint (d/e 10) is, therefore, DENIED as to punitive and exemplary damages.

## V. CONCLUSION

For the reasons stated, Defendants' Partial Motion to Dismiss

and Strike Plaintiff's Amended Complaint (d/e 10) is GRANTED in part and DENIED in part. Count I of Plaintiff's Amended Complaint (d/e 8) is DISMISSED with PREJUDICE.

**ENTERED: November 14, 2025.**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**